UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL A. ANDERSON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 12-0546 (CKK) |
| UNITED STATES PAROLE COMMISSIONER ISAAC FULWOOD, JR., *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This matter is before the Court on defendants' motion to dismiss.[1] For the reasons stated below, the motion will be granted.

I. BACKGROUND

*A. Parole Under District of Columbia Law*

In the days of indeterminate sentencing, the Superior Court of the District of Columbia sentenced a convicted felon "for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed," after which the prisoner "may be released on parole . . . ." D.C. Code § 24-403(a). The District of Columbia Board of Parole ("Parole Board") could parole a prisoner if it found that "there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his . . . release is not incompatible with the welfare of society, and that he . . . has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be." D.C.

---

[1] Plaintiff's Motion for Appointment of Counsel will be denied as moot.

1

Code § 24-404(a).  Initially there was "no formalized scoring system" in place, and the Parole Board only "was required by regulation to consider factors such as the inmate's offense, prior history of criminality, personal and social history, . . . [and] institutional experience, . . . when exercising its discretion to authorize parole." *Davis v. Henderson*, 652 A.2d 634, 635 (D.C. 1995).  In short, "parole eligibility was determined by a . . . Board that operated with nearly complete discretion." *Wilson v. Fulwood*, 772 F. Supp. 2d 246, 252 (D.D.C. 2011) (citing *Austin v. Reilly*, 606 F. Supp. 2d 4, 8 (D.D.C. 2009)).  The Parole Board subsequently developed and published regulations, *see* D.C. Mun. Regs. tit. 28, § 100 *et seq.* (1987) (repealed Aug. 5, 2000) ("1987 Regulations"), in an effort to "mak[e] explicit those factors that [would] be considered in each [individual] case." *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 69 (D.D.C. 2008) (citations omitted and emphasis removed).

Pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub. L. No. 105-33, 111 Stat. 712 (1997), the Parole Board was abolished.  *See* D.C. Code § 24-131(b).  The United States Parole Commission ("USPC") assumed authority to grant, deny, impose or modify conditions of, and revoke parole for District of Columbia Code felony offenders, *see id.* § 24-131(a)(1), (2), and "amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." *Id.* § 24-131(a)(1); *see id.* § 24-131(c).  The USPC has since promulgated regulations for parole and reparole decisions for District of Columbia felony offenders. *See generally* 28 C.F.R. §§ 2.80-2.81.

### B.  Plaintiff's Parole History

On April 26, 1985, in the Superior Court of the District of Columbia, plaintiff was sentenced three concurrent five to 15 year terms of imprisonment upon his conviction of three

armed robberies committed in 1983. *See* Compl., Ex. 1 (Judgment and Commitment Order, *United States v. Anderson*, No. F-3721-83 (D.C. Super. Ct. Apr. 26, 1985) and Criminal Complaints dated June 25, 1983 and October 4, 1983). The Parole Board paroled plaintiff on June 8, 1989, and he was to remain under supervision until January 22, 2000. Mem. of P. & A. in Supp. of Defs.' M't. to Dismiss ("Defs.' Mem."), Ex. B (Certificate of Parole dated April 25, 1989). Before the parole term had expired, however, plaintiff had been convicted of attempted distribution of cocaine and sentenced by the Superior Court to an eight to 24 year term of imprisonment to be served concurrently to the sentences previously imposed both by the Superior Court and courts of the State of Maryland. *Id.*, Ex. C (Judgment and Commitment Order, *United States v. Anderson*, No. F-7099-91 (D.C. Super. Ct. Sept. 8, 1992)); *see* Compl., Ex. (Criminal Complaint dated June 20, 1991). Upon this 1992 conviction, the Parole Board revoked plaintiff's parole and opted to reconsider the matter when plaintiff became eligible for parole release on the aggregated sentences. Defs.' Mem., Ex. D (Notice of Board Order dated November 18, 1992).

By the time plaintiff became eligible for parole, the USPC had assumed jurisdiction over parole matters involving District of Columbia Code offenders. A USPC hearing examiner conducted plaintiff's parole hearing on December 14, 1998, and applied parole guidelines promulgated by the USPC. *See* Defs.' Mem., Ex. E (D.C. Initial Hearing Summary). On July 16, 1999, plaintiff was paroled on the aggregate sentence (both the 1992 sentence and the violator term). *Id.*, Ex. F-G (respectively, Notice of Action and Certificate of Parole dated July 16, 1999). His term of parole supervision was set to expire on September 16, 2016. *Id.*, Ex. G at 1.

Plaintiff was arrested in the District of Columbia on February 16, 2005, and was charged with distribution of crack cocaine, powder cocaine, and cannabis, and possession of a double-barrel sawed-off shotgun. Defs.' Mem., Ex. H (Warrant Application dated April 29, 2008) at 1. Upon his conviction in the United States District Court for the District of Columbia on September 16, 2006, plaintiff was sentenced to a 40-month term of imprisonment followed by a three-year term of supervised release. *Id.*, Ex. H (Warrant Application) at 2. Based on the criminal conduct underlying these federal offenses, which amounted to violations of the conditions of his parole release, the USPC issued a parole violator warrant. Defs.' Mem., Ex. H (Warrant dated April 29, 2008). By this time, plaintiff had begun service of his federal sentence. The USPC instructed that the United States Marshal lodge its warrant as a detainer. *Id.*, Ex. H (Memorandum from Deirdre Jackson, Acting Case Services Administrator, USPC, to U.S. Marshal for the District of Columbia dated April 29, 2008). The Federal Bureau of Prisons obliged. *Id.*, Ex. I (Detainer Action Letter dated May 14, 2008). The warrant was executed on August 31, 2010 by Jonathan C. Miner, Warden of the Rivers Correctional Institution, upon completion of the federal prison sentence.[2] *Id.*, Ex. H (United States Marshal's Return to the United States Parole Commission). Plaintiff remained in custody, and Sandra G. Hylton, a USPC hearing examiner, conducted a parole revocation hearing on October 15, 2010. *Id.*, Ex. K (Hearing Summary dated October 15, 2010) at 1. Consistent with the hearing examiner's recommendation, *see id.*, Ex. K at 3, as approved by Executive Reviewer S. Husk, *id.*, Ex. K at 4, the USPC revoked plaintiff's parole and set a presumptive re-parole date of June 2, 2013, after service of 68 months, *id.*, Ex. L (Notice of Action dated November 24, 2010) at 1. The National

---

[2] Rivers Correctional Institution is operated by a private corrections company and houses inmates under contract with the Federal Bureau of Prisons.

Appeals Board ("NAB") affirmed the USPC's decision on May 2, 2012. *Id.*, Ex. M (Notice of Action on Appeal dated May 3, 2012).

## II.  DISCUSSION[3]

### A.  *Count 1: Appeal to the National Appeals Board*

Plaintiff alleges that he was denied due process when defendant Fulwood "failed to answer in a timely manner" the appeal he mailed on December 10, 2010. Compl. at 7. By regulation, the National Appeals Board, the entity to which a prisoner directs his written appeal of a USPC decision, *see* 28 C.F.R. § 2.26(a), should have "act[ed] within sixty days of receipt of [plaintiff's] papers to affirm, modify, or reverse" the USPC's prior decision." 28 C.F.R. § 2.26(c). Yet in this instance, the NAB did not issue its decision until nearly two years later, long after its 60-day time limit had passed. However, now that the NAB has acted, there remains no relief for the Court to grant. Plaintiff's claim will be dismissed as moot. *See Spencer v. Kenma*, 523 U.S. 1, 7 (1998).

### B.  *Counts 2 and 3: Ex Post Facto Claim*

The United States Constitution prohibits any State from passing an "ex post facto Law." U.S. Const. art. 1, § 9, cl. 3. The clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Cal. Dep't of Corr. v. Morales*, 514

---

[3] The Court summarily dismisses plaintiff's claim, *see* Compl. at 1, under 42 U.S.C. § 1981. Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts," 42 U.S.C. § 1981(a), "without respect to race," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (2006). A viable "claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff[s] ha[ve] rights," whether "racial discrimination blocks the creation of a contractual relationship [or] impairs an existing contractual relationship," *McDonald*, 546 U.S. at 476. Plaintiff's complaint fails to mention his race or to allege the existence or impairment of a contractual relationship.

U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 31, 43 (1990)). "In order to state an ex post facto claim, plaintiff would have to allege that the parole authority is applying later-adopted laws that disadvantage him instead of the laws that were in effect at the time he committed the offenses." *Austin*, 606 F. Supp. 2d at 9 (citing *Weaver v. Graham*, 450 U.S. 24, 30 (1981)). In the parole context, a "retroactively applied parole . . . regulation or guideline violates the Ex Post Facto Clause if it 'creates a significant risk of prolonging [plaintiff's] incarceration.'" *Fletcher v. Reilly*, 433 F.3d 867, 877 (D.C. Cir. 2006) (quoting *Garner v. Jones,* 529 U.S. 244, 251 (2000)).

Plaintiff alleges that "retroactive application of the federal reparole statutes and regulations . . . adversely affected his eligibility and suitability for reparole," thus "creat[ing] a significant risk of prolonging [his] incarceration." Compl. at 1. In Count 2 of the Complaint, plaintiff alleges that defendants "used federal guidelines established by the USPC . . . by adding (2) months for each non-drug related infraction," allegedly done in "violation of the Ex Post Facto [Clause]." *Id.* at 7. In Count 3, plaintiff contends that defendants incorrectly "employ[ed] federal procedure" at the October 15, 2010 revocation hearing. *Id.* at 8. Plaintiff suggests that the guideline range in his case, 64-92 months to be served before reparole, is harsh in comparison to the 1987 Regulations. *See id.* The Court construes Counts 2 and 3 together as a challenge to the application of the USPC's guidelines, rather than the former Parole Board's 1987 Regulations, to plaintiff's case.

Nothing in the record of this case suggests that the Parole Board's 1987 Regulations apply to plaintiff. "[A] plaintiff may invoke *ex post facto* protection only on the basis of the parole regime that was in effect at the time he committed his offense[s]." *Austin*, 606 F. Supp. 2d at 7-8 (citation omitted). Plaintiff committed his first parolable offenses in 1983, roughly four

years before the Parole Board promulgated the 1987 Regulations. Prior to 1987, "parole eligibility was determined by a D.C. Parole Board that operated with nearly complete discretion," *Wilson*, 772 F. Supp. 2d at 252 (citing *Austin,* 606 F. Supp. 2d at 8). Given the "totally unfettered" discretion under which the Parole Board operated in those days, *see Sellmon v. Reilly*, 561 F. Supp. 2d 46, 50 (D.D.C. 2008), the Court cannot conclude that plaintiff would have fared better under a prior regime.

Moreover, the law recognizes no liberty interest in parole, and, therefore, plaintiff fails to state a due process claim under the Fifth Amendment. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmate of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7 (1979). The District of Columbia Code "provides no substantive limitations on the Board's authority to grant parole which would create a liberty interest." *Price v. Barry*, 53 F.3d 369, 370 (D.C. Cir. 1995). And under the 1987 Regulations, "parole is never '*required* after the Board determines that the necessary prerequisites exist.'" *Ellis v. District of Columbia,* 84 F.3d 1413, 1420 (D.C. Cir. 1996) (quoting *Bd. of Pardons v. Allen,* 482 U.S. 369, 376 (1987)) (emphasis in original); *McRae v. Hyman,* 667 A.2d 1356, 1361 (D.C. 1995) (concluding that the 1987 Regulations do not give rise to a liberty interest in parole).

### C.  Count 4: Delayed Revocation Hearing

Plaintiff contends that defendants violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution by delaying his parole revocation hearing, and thus "substantially prejudice[d] his ability to defend allegation[s of parole violations] and hamper[ed] rehabilitation by placing his future into a state of prñolonged [sic] uncertainty."

Compl. at 9.[4]  Presumably plaintiff is referring to the period between his arrest in 2005 and the parole revocation hearing on October 15, 2010.  During that period, plaintiff was serving his federal sentence, and the USPC was under no obligation to conduct a revocation hearing while plaintiff was serving it.  *See Moody v. Daggett*, 429 U.S. 78, 89 (1976) (finding that a federal parolee imprisoned for a crime committed while on parole was not constitutionally entitled to a prompt revocation hearing when the parole violation warrant was issued and lodged as detainer with the institution of his confinement, but was neither served nor executed).  Only when plaintiff was taken "into custody as a parole violator by execution of the warrant," *id.* at 87, was the USPC obligated to accord plaintiff the due process to which he was entitled, *see Morrissey v. Brewer*, 408 U.S. 471 (1972), including  written notice of the claimed violation of parole and an opportunity to be heard on the matter, *id.* at 489.

### D.  Count 5:  Execution of Parole Violator Warrant

Plaintiff states that the parole violator warrant was "executed on August 31, 2010 at Rivers Correctional Institution, . . . a Private Contract Prison, and by a private citizen warden . . . who scratch[ed] out the U.S. Marshal names" on the warrant.  Compl. at 10.  He deems the execution of the warrant "a[n] unauthorized[d] arresst [sic]."  *Id.*

Insofar as plaintiff challenges his detention on the ground that the warrant was false or otherwise defective, he must do so by means of a petition for a writ of habeas corpus.  Where, as here, a prisoner "challeng[es] the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release

---

[4]  "It is the due process clause of the Fifth, not the Fourteenth, Amendment that applies to actions of the federal government."  *Peavey v. Holder,* 657 F. Supp. 2d 180, 186 n.6 (D.D.C. 2009), *aff'd* No. 09-5389, 2010 WL 3155823 (D.C. Cir. Aug. 9, 2010).

from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus."). Plaintiff cannot bring a civil action seeking a declaratory judgment in order to obtain his release. *See LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C. Cir. 1996) (concluding that plaintiffs challenging the constitutionality of federal extradition statutes could do so through a petition for writ of habeas corpus, not through a civil action for declaratory and injunctive relief); *Smocks v. United States*, No. 10-0361, 2010 WL 1780270, at *1 (D.D.C. May 3, 2010) (concluding that prisoner must proceed by means of a habeas petition, not a complaint under the Declaratory Judgment Act, to challenge the constitutionality of certain provisions of federal law pertaining to his ability to seek release from custody).

Furthermore, a habeas action is subject to jurisdictional and statutory limitations. *See Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484 (1973). One such limitation is the requirement that a habeas corpus action be brought against plaintiff's warden. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); *Blair-Bey v. Quick*, 151 F.3d 1036, 1039 (D.C. Cir. 1998) (citing *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810 (D.C. Cir. 1988)). Moreover, this district court cannot "entertain a habeas petition involving present physical custody unless the [plaintiff's] custodian is within its territorial jurisdiction." *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1239 (D.C. Cir. 2004).

## III.  CONCLUSION

Because plaintiff fails to state a claim upon which relief can be granted, the Court will grant defendants' motion to dismiss and deny plaintiff's motion for appointment of counsel.  An Order accompanies this Memorandum Opinion.


DATE:  January 18, 2013                    /s/
                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge